STATE v. STELLO.

STATE v. STENKEN.

STATE v. HILLSON.

CHARGE—CON. OF 1895.—For a Judge to say in his charge, in the interrogative form, did the witness, Jones, say so and so, is contrary to sec. 26 of art. V., Con. 1895.

Before BENET, J., Charleston, March, 1896. Reversed.

Three indictments against H. Stello, E. & G. Stenken, and P. J. Hillson, respectively, for maintaining a common nuisance. The following is the charge of the presiding Judge in the Stello case (the charge being similar in all the cases):

You will bear in mind that although there are primarily three counts in this indictment, there is only one against this defendant, Stello; so you will consider the testimony you have heard on the stand simply for the purpose of arriving at a conclusion as to whether he is guilty of the offense charged in the second count—not for the purpose of determining whether he is to be punished for selling alcoholic liquors, because he is not charged with selling; nor whether he is to be punished for keeping that in his possession or storing that, because he is not charged with that. Under this indictment, he is charged with keeping a common nuisance; and under the dispensary law that is defined as being a place where alcoholic liquors are sold, bartered, exchanged or given away; or a place where persons are permitted to resort for the purpose of drinking alcoholic liquors as a beverage; and, third, a place where alcoholic liquors are kept for sale, barter or delivery. So if there be testimony in the case tending to show, or intended to show, that Stello, the defendant, made a sale, or sales, you can only regard that testimony as throwing light or not upon the question whether he was keeping a common nuisance, as described to you. If there is evidence tending to show, or intended to show, that Stello, the defendant, had alcoholic liquors in his possession, was keeping them stored, you will consider that testimony solely with a view to arriving at a conclusion whether he was keeping a place where alcoholic liquors were kept for sale, barter, exchange or delivery, or whether he was keeping a place where persons were permitted to resort for the purpose of drinking alcoholic liquors as a beverage. The State is bound to prove in this case, as in all criminal cases, the guilt of the accused beyond all reasonable doubt before

the jury would be justified in finding a verdict of guilty. The presumption of the law in this, as in all criminal cases, is, that the defendant is innocent until he is proved guilty; that presumption can only be removed by a verdict of guilty. The defendant having put up no testimony in the case, there are necessarily no conflicts between the State's witnesses on the one side and the defendant's witnesses on the other; no contradictions to be explained and settled between two sets of witnesses, so that you are left simply and solely to decide this case upon the credibility of the State's witnesses. The defendant has a perfect right to sit mute in the case; his not going on the stand and not putting up any witnesses is a matter for himself and his counsel, and is not to be regarded as prejudicial to his case. It is for the jury to say whether the testimony for the State is credible, believable, or whether it has been contradicted, or may have been contradicted or explained away.

Reminding you again that the defendant is not charged with the sale of liquor, nor with keeping in possession liquor, but of keeping a common nuisance, you will consider the several witnesses and say whether the State has proved beyond a reasonable doubt that Stello has been keeping and maintaining a place where alcoholic liquors are sold, bartered or given away, or whether he has been keeping a place where persons were permitted to resort for the purpose of drinking alcoholic liquors as a beverage, or keeping or maintaining a place where alcoholic liquors were kept for sale, barter, exchange or delivery. If the State's witnesses have testified on the stand as to several occasions when liquors, beer, and whiskey, in various quantities, were found on his premises, your first question will be, is that testimony true? If true, what is the effect of it? Is there sufficient proof beyond a reasonable doubt that he was keeping that beer and whiskey there for sale, or was he selling that, or was he keeping that for his personal use? What is the evidence as to his keeping that for his personal use? If the defendant has furnished any testimony

as to that in the case, then you will consider the State's testimony on that point. Does he say it was for his own personal use? You will consider whether that is true or not; you will consider the quantity found, if any was found, at the various times mentioned, if they were found at various times. It is for you to say whether it is true or not whether six boxes of Palmetto beer were found on the 31st August, twenty-four bottles in a box and two demijohns of rye whiskey in an outhouse in the yard. In regard to the bottles of Palmetto beer, I remind you again, it matters not where the beer was purchased; the question is, were the liquors kept there for sale, or were they sold there? If the defendant, Stello, said, with reference to those six boxes of beer, that he bought the beer in kegs because he made more out of it, if he used that expression to Towles, is it true? and if so, did he mean that he made more beer or more profit out of it? Did he say to Peterman it realizes more out of a keg? It is for you to put a reasonable construction on it and say whether he meant that he was realizing more beer or more profit. If two demijohns of rye whiskey were found in his yard, and there was evidence that there was a colored person in the house, you must decide whether those two demijohns were in his yard as his property or not. If it is in evidence that he did claim the beer and did not claim the whiskey, you will say whether it was found on his premises, if it was found at all; and are you to presume that that whiskey was his whiskey, put there by him? If there is evidence that he refused to open that house, it is for you to say whether that refusal was because he did not want to disclose what was in the house, or did he refuse because he had no power to open the house? If there is evidence that on the 27th December, 1894, there was a keg of beer found on his place under a crocus bag, and seven large beer glasses, if that be true, it is for you to decide whether that throws light on the fact that he was keeping alcoholic liquors for sale, or was he keeping that beer for his own private use? You will consider from the

surroundings, the keg of beer under the crocus bag—was that simply an ordinary covering, or was it a covering for concealment—and the seven beer glasses, were they for his own personal use? Is there any testimony as to there being several colored men in there? As to that, you will say whether that throws light on the question whether he was keeping a place where persons were permitted to resort for the purpose of drinking alcoholic liquors as a beverage. If there is any evidence before you that on November 25th, 1895, six boxes of beer were again found, if that is true, was that for his own personal use, or did he have it there for sale, barter or exchange? If there is evidence that on the 29th September, 1895, nine bottles of beer and a bottle containing whiskey, behind a counter by a show-case, were found, you will say whether that throws any light on the question whether he was keeping a place where alcoholic liquors were kept for sale or not, or were those liquors for his private use. If there is any evidence that a keg of beer was found last summer, having been left there by the Palmetto Brewery wagon, it is for you to· say whether it was for his personal use or for sale. If there is evidence that on the 8th February, 1896, Private Cox followed three colored men into Stello's place and heard one of them say, "Let's have something to drink," you will ask the question if that is true; if it is true, what does it. mean? Does it mean that they were going there to drink alcoholic liquors; that they were permitted to go to a place where persons were allowed to go for the purpose of drinking alcoholic liquors as a beverage? If that is true, does that throw light on the question whether he was keeping a place where liquors were sold, or does it throw light on the question whether he was keeping a place where persons were permitted to resort for the purpose of drinking alcoholic liquors as a beverage? Does Cox say that Stello had poured out one glass and was pouring out another drink, and that three glasses were on the counter, and that he took the bottle out of Stello's hand, and that Stello knocked the glass over? If that is true, you will

say whether that throws any light on the question whether he was keeping alcoholic liquors for sale, or a place where persons were permitted to resort for the purpose of drinking alcoholic liquors as a beverage. If there is evidence before you from the witness, Bozard, that on the 24th September, 1895, he and his two brothers went in there and got three drinks of rye whiskey, you will first ask if that is true; and if it is true that they bought the liquor and paid for it, and that Stello served them, you will consider that testimony not for the purpose of convicting him of a sale of liquor, but to throw light on the question whether he was keeping liquors there for sale, you will consider if it is worthy of belief. In this case, as in all cases, you are to be governed by not only the testimony given on the stand; you cannot stop there. You are to be governed by the credibility of the witnesses on the stand. Not everything said on a stand by a witness under oath may be true; it may or may not be true. The jury must judge. As the counsel for the defendant has referred to the witness, Bozard, as a volunteer witness, if it is in evidence that he is a volunteer, I charge you that the law does not favor voluntary testimony as such, and juries ought to be careful in scrutinizing closely such testimony, so as to arrive at a motive of the person volunteering testimony, if it is volunteered. It may be from the highest motive, it may be also from the lowest motive, and the juries are to be the judges of what motives may have induced the witness to give testimony in a criminal case. After all, it is a question of credibility, no matter what the motive. If the testimony told be true, it is just as good testimony as if the motive was of the highest character, or the witness was bound over to come into Court and could not help himself. Does the motive, however, throw light upon the credibility of the witness? Having obtained the motive, you will say whether that detracts from the testimony. You will give his testimony just such weight as under the circumstances it deserves, not throwing it out entirely because it is apparently volunteer

testimony, on that account alone, but throwing it out entirely only if you are satisfied that it is not worthy of belief. The policy of the law does not favor voluntary testimony as such in criminal cases, and jurors should look carefully into the motives and the circumstances that produced the testimony on the stand.

Counsel asks me to charge, that if the defendant purchased a keg of beer from the Palmetto Brewing Company, he had the right to keep the same in his place of business for his own personal use or, *bona fide*, to allow his family or friends to drink the same, if no element of barter or exchange or sale entered into it. I so charge you. He or any one else has a right to have liquors at his house or place of business. The question for the jury is, was the liquor, if kept there, kept for the purpose of sale, barter or exchange, or was it kept in a place where persons were permitted to resort for the purpose of drinking alcoholic liquors as a beverage? Taking all the testimony of the witnesses for the State as to the various occasions when liquors were found there or sold there, you will decide this matter one way or the other, and say whether the State has made out a case of guilt under the second count against this defendant of keeping a common nuisance. Has the State satisfied you beyond a reasonable doubt that he has been keeping a place where alcoholic liquors have been sold, bartered or exchanged or given away, or has he been keeping a place where people were permitted to resort for the purpose of drinking alcoholic liquors as a beverage, or were they kept there for sale? The simple question, therefore, for you is, is the testimony of the State true; if true, is it sufficient to satisfy you beyond a reasonable doubt that he is guilty? If so, convict him; if not, acquit him. The form of your verdict will be either guilty under the second count or simply not guilty, as you view the testimony.

Defendant was convicted on the second count. The defendants in the other cases were also convicted, and all appealed on the following exceptions:

First. That his Honor erred in refusing to quash the indictments in the said several causes, upon the ground urged, to wit: That the indictment was bad, in that it improperly joined three distinct offenses: 1. Selling intoxicating liquors; 2. Keeping a place where persons were permitted to resort for the purpose of drinking intoxicating liquors; and 3. Storing the same.

Second. That his Honor erred in refusing to quash the second count in the said several indictments, upon the ground presented, to wit: Duplicity, in that it charged three separate offenses in the same count: 1. Maintaining a place where intoxicating liquors are sold, in violation of the act; 2. Maintaining a place where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage; 3. For maintaining a place where intoxicating liquors are kept for sale, barter or delivery, in violation of the act.

Third. That his Honor erred in his charge to the jury, in that he stated the testimony to the jury contrary to the provisions of sec. 26, art. V., of the Constitution of the State of South Carolina (fols. 60 to 70, 150 to 166, and 282 to 292).

*Messrs. L. D. Melton* and *Alston & Patton*, for appellant, cite: 47 S. C., 488; Con. 1895, sec. 26, art. V.; 31 S. C., 235.

*Solicitor Jervey*, contra, cites: Con. 1895, sec. 26, art. V.; 35 S. C., 16; 31 S. C., 254; 47 S. C., 488.

July 1, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. The defendants named in the three above stated cases (which were tried separately, but are heard in this Court on appeal together, for convenience of the parties named as appellants), were tried before Judge Benet and a jury at the March, 1896, term of the Court of General Sessions for Charleston County, for maintaining a common nuisance, under the 22d section of what is known as the dispensary law of this State (21 Stat. at Large, 736; also 22 Stat. at Large, 139), and, after conviction, were duly sentenced.

They now appeal to this Court. Let the exceptions taken in H. Stello's case and the charge of the Circuit Judge in that case be reported. From these ·exceptions it will be seen that the first two thereof relate to the objections raised against the indictment. We have just disposed of similar objection to a similar indictment in the cases of the State against J. H. Beckroge, the State *v.* E. Perano, and the State against J. A. Bertucci, and we desire that our remarks there used shall be applied in each of the three cases now at bar. These exceptions are overruled.

We will now consider the charge of the presiding Judge, to see if it is liable to the exception that it is a violation of the 26th section of article V. of the Constitution of this State, adopted in 1895. The exact language of this section is as follows: "Judges shall not charge juries in respect to matters of fact, but shall declare the law." It differs from the section in the Constitution of 1868 in the omission of a permission to the judges to "state the testimony." See section 26 of article IV. of Constitution of 1868. The judgment of the Supreme Court of this State in the case of *Norris* v. *Clinkscales*, 47. S. C., 488, is controlling until modified or reversed in relation to the true construction of this section of our new Constitution. The charge of Judge Benet, when subjected to this test (*Norris* v. *Clinkscales*, *supra*), was in violation of this section, as is made evident by a comparison of that decision with his charge. In *Norris* v. *Clinkscales*, *supra*, it is said: "We are clearly of the opinion that under section 26, as it now reads, a judge may, in declaring the law applicable to the case, base that law upon hypothetical findings of fact by the jury, and instruct the jury that if they believe so and so from the evidence they have heard, then such and such will be the legal result. In so doing, if he be careful not to repeat any of the testimony nor to intimate, directly or indirectly, what is in evidence, he will be chargeable neither with stating the testimony nor in charging in respect to matters of fact." Compare these words of the decision of this Court with what

the Circuit Judge in his charge says after the testimony of the witnesses, *Jones, Brabham, McCaffery, Dunu, Peterman, Newman,* and who can fail to say that the Circuit Judge stated the testimony, for each of these witnesses had sworn to the facts, thus presented by the Circuit Judge in his charge to the jury, in an interrogative form. A very powerful mode of stating a fact by a skillful person is this same interrogative mode of stating such fact. Indeed, it may be thus so presented as to become a living verity to the listener. We cannot so view this section 26 of article V. of our present Constitution, as permitting such a statement of the testimony in a case to the jury by the Circuit Judge. It follows, therefore, that this exception is well taken.

It is the judgment of this Court, that the judgment of the Circuit Court in each one of the three cases hereinbefore stated, as now before us on appeal, be reversed, and each of said causes be remanded to the Circuit Court for a new trial.

Justices Gary and Jones concur in result.